UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Bobbi Jackson and Matthew Jackson,

                              Plaintiffs,

      v.

Bank of America, N.A.,

                              Defendant.

**Decision and Order**

16-CV-787G

_____

## I. INTRODUCTION

Bobbi and Matthew Jackson took out a mortgage loan to buy a house but fell behind in their payments when Matthew lost his job. Once their finances improved, the Jacksons applied for loss mitigation to help them make up for payments that were past due and avoid foreclosure. The lender, defendant Bank of America, N.A. (the "Bank"), allegedly mishandled the application process in a way that ran afoul of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601–2617, and one related regulation, 12 C.F.R. § 1024.41. The Jacksons commenced this litigation by filing a potential class-action complaint on September 30, 2016. (Dkt. No. 1.)

The Jacksons now have filed a non-dispositive[1] motion to amend the complaint to add another set of lead plaintiffs, McKinley and Angel Moses from Illinois. (Dkt. No. 30.) The Jacksons believe that adding the Moses plaintiffs will promote judicial economy by avoiding the filing of an identical case in Illinois. At the same time, the Jacksons argue that amendment will not cause any delay or prejudice to the Bank. The Bank opposes amendment because, in their view, the

---

[1] Motions to amend a complaint are considered non-dispositive. *See, e.g., Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); *Palmer v. Monroe Cty. Sheriff*, 378 F. Supp. 2d 284, 289 (W.D.N.Y. 2005) (citations omitted).

Court lacks personal jurisdiction over the Moses plaintiffs. The Bank raises additional objections about delay and prejudice that would result.

Chief Judge Frank P. Geraci has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 16.) The Court heard oral argument on May 3, 2018. (Dkt. No. 36.) For the reasons below, the Court denies the motion.

## II. BACKGROUND

This potential class-action case concerns allegations that the Bank mishandled the Jacksons' attempts at loan modification when they fell behind in their mortgage; the Bank's conduct allegedly sent the Jacksons' home into foreclosure, increased fees that they owed, and violated federal housing regulations in the process. Since the details of the Jacksons' allegations are not directly germane to the pending motion, the Court will presume familiarity with the summary of facts and allegations that Chief Judge Geraci included in his Decision and Order addressing the Bank's motion to dismiss (Dkt. No. 15). Very briefly, and as summarized by Chief Judge Geraci,

> Plaintiffs purchased their home in 2007. Their initial monthly mortgage payment was $609.44, and Defendant subsequently became the servicer of Plaintiffs' mortgage. In 2009, Plaintiffs fell behind on their mortgage payments after Plaintiff Matthew Jackson's employer laid him off. In 2010, after Mr. Jackson found a new job, Plaintiffs attempted to make partial payments on the overdue amount they owed Defendant. Defendant rejected the partial payments, demanding instead that Plaintiffs pay the overdue amount in a single lump sum or face foreclosure. Plaintiffs could not afford to pay a lump sum, and repeatedly requested mortgage assistance from Defendant. Defendant rejected the requests, informing Plaintiffs that it was missing information from them, even though Plaintiffs had already submitted the information Defendant claimed it was missing.
>
> Because Defendant would not grant Plaintiffs mortgage assistance and rejected Plaintiffs' partial payments, the outstanding amount Plaintiffs owed on their mortgage continued to grow, and Defendant assessed late fees, property inspection fees, fees for mortgage insurance and other charges to the balance of what the Jacksons owed.

(Dkt. No. 15 at 2.) After considering the Bank's motion to dismiss (Dkt. No. 6), Chief Judge Geraci dismissed all of the Jacksons' claims except for the claim that the Bank violated 12 C.F.R. § 1024.41(b) in the way that it handled their January 2014 loss mitigation application. (Dkt. No. 15 at 16.)

The Jacksons now seek to amend their complaint, and they have filed a motion to that effect that includes a redlined copy of a proposed amended complaint. (Dkt. No. 30.) The Jacksons proposed two substantive amendments. The lesser amendment, uncontested by the Bank, would formally remove state-law claims that Chief Judge Geraci dismissed. (Dkt. No. 30-4 at 56.) The greater amendment would add a second couple as lead plaintiffs: McKinley and Angel Moses, residents of Richton Park, Illinois. (*Id.* at 10.) The Jacksons summarize as follows why the Court should allow the Moses plaintiffs to join them in this case:

> Plaintiffs should be permitted to amend the Complaint to add the Moseses, as doing so will promote judicial economy and will not prejudice BofA. Adding the Moseses to the Complaint saves both the parties and the judicial system the needless expense of litigating an additional, substantially identical case. Moreover, BofA will not be prejudiced by the addition of the Moseses. Discovery has only recently commenced (and although the parties have engaged in some meet and confer conferences, BofA has yet to produce any documents), and the Moseses' claims are nearly identical to the Jacksons'.
>
> * * *
>
> The Moses' claims are similar to those of the Jacksons, as are their legal claims. The addition of the Moseses to the Complaint does not implicate any of the *Foman* [*v. Davis*, 371 U.S. 178 (1962)] factors and saves both the parties and the judicial system from litigating an additional action based on the same events and claims.

(Dkt. No. 30-2 at 2, 4.) The Bank opposes the Jacksons' motion for several reasons, but one reason concerns futility—specifically, the lack of personal jurisdiction that this Court has over the Moses plaintiffs:

> The Court exercised personal jurisdiction over Bank of America with respect to the Jacksons' claims because they are New York residents and, therefore, "a

3

> substantial part of the events or omissions giving rise to this action occurred in this District." Compl. ¶ 18. Not so for the Moseses. The Moseses live in Illinois and do not describe any events occurring in this District. ECF No. 30-4 ¶ 25. Accordingly, there is no asserted basis for this Court to exercise jurisdiction over their claims.
>
> Personal jurisdiction must be grounded on either (i) general jurisdiction, limited to states where the corporation is "at home," or (ii) specific jurisdiction, limited to claims arising out of the defendant's contacts with the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 924 (2011); *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). General jurisdiction is lacking here because Bank of America is not incorporated in New York and does not maintain its principal place of business there. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Specific jurisdiction is also lacking because "courts cannot claim specific jurisdiction" where "the conduct giving rise to the nonresidents' claims occurred elsewhere." *Bristol-Myers Squibb*, 137 S. Ct. at 1781.
>
> The fact that the Jacksons can plead specific jurisdiction based on their residence in New York does not permit the Moseses to do the same. Specific jurisdiction must exist independently for each plaintiffs' claims. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017) (holding that "[t]he mere fact that other plaintiffs" had a connection to the forum does not permit specific jurisdiction over "nonresidents," and that "[t]his remains true even when [other] parties . . . can bring claims similar to those brought by the nonresidents"). Lacking any basis for exercising jurisdiction over the new claims, the proposed amended pleading would be futile.

(Dkt. No. 32 at 5–6.) The Jacksons respond that the Bank has sufficient regular contact with New York to establish general jurisdiction:

> BofA is "at home" in New York. BofA has approximately 305 offices and branches in New York. *See* Declaration of Jonathan K. Tycko ("Tycko Decl."), Exh. A. According to its most recent Form 10-K filing, BofA has approximately $17.2 billion in residential mortgages in New York (second only to California). Tycko Decl., Exh. B at 69. BofA's single largest office is in New York, namely, the approximately 1.8 million square feet Bank of America Tower at One Bryant Park. Tycko Decl., Exh. B at 18. And recent press reports indicate that BofA will soon be substantially expanding its corporate presence in New York City, adding approximately 500,000 square feet of additional office space in two other buildings on Bryant Park. Tycko Decl., Exh. C. In addition, in 2008, BofA acquired Merrill Lynch, a historically New York-based Wall Street firm, and Merrill Lynch—now a division of BofA—continues to have its headquarters in New York. Tycko Decl., Exh. D. In light of these facts, BofA is clearly "at home" in New York, and would face absolutely no unfairness—let alone a violation of its "due process" right—in having to defend the Moseses' claims in this Court.

(Dkt. No. 35 at 3–4.) The Jacksons believe that specific jurisdiction exists as well:

> Here, BofA does not even contend—let alone demonstrate—that litigating the Moseses' claims in this Court poses any undue burden. Nor could it possibly make such a claim. That claim has nothing Illinois-specific about it, and BofA will easily be able to defend itself fully in this Court. Moreover, because this is a putative nationwide class action, the Moseses are not "strangers to this litigation." *Id.* at *9. Rather, they are likely part of the putative class that this Court may ultimately certify. Indeed, if anything, BofA will face a greater burden of piecemeal litigation if the Moseses are forced to file a separate suit in Illinois rather than simply join in this already-ongoing case. Accordingly, because it would not violate the Fifth Amendment due process clause for this Court to exercise specific jurisdiction over BofA with respect to the Moses's claim, the Court should reject BofA's personal jurisdiction argument.

(*Id.* at 5.)

### III. DISCUSSION

#### A. *Motions to Amend Generally*

Under the circumstances here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citation omitted). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted).

#### B. *Futility and Personal Jurisdiction*

##### i. *General Jurisdiction*

The Court will begin its analysis by assessing the Bank's argument that general jurisdiction does not exist here. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P.

4(k)(1)(A)). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks and citation omitted). State law will determine the outermost boundaries here as well; RESPA's jurisdictional provision does not address the limits of service, and the parties have not pointed out any other federal statute that would address those limits. *See generally* 12 U.S.C. § 2614. With respect to state law, "[f]or a court to exercise general jurisdiction over a defendant, 1) state law must authorize general jurisdiction; and 2) jurisdiction must comport with constitutional due process principles." *Reich v. Lopez*, 858 F.3d 55, 62 (2d Cir.), *cert. denied*, 138 S. Ct. 282, 199 L. Ed. 2d 127 (2017) (internal quotation marks and citation omitted). New York has a statute that authorizes general jurisdiction. *See* N.Y. CPLR 301; *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990) ("A foreign corporation is amenable to suit in New York courts under CPLR 301 if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted.") (citations omitted). Whether general jurisdiction exists here thus reduces to the question of whether that reach would violate federal constitutional due process principles.

"Constitutional due process assures that an individual will only be subjected to the jurisdiction of a court where the maintenance of a lawsuit does not offend traditional notions of fair play and substantial justice." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 328 (2d Cir. 2016), *cert. denied sub nom. Sokolow v. Palestine Liberation Org.*, 138 S. Ct. 1438 (2018) (internal quotation marks and citation omitted). "Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and

6

the foreign corporation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted); *see also Daimler AG*, 571 U.S. at 137 ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (internal quotation and editorial marks and citations omitted). The phrase "paradigm forum" does not necessarily mean the only way to establish general jurisdiction. *See BNSF Ry. Co. v. Tyrrell*, ___ U.S. ___, 137 S. Ct. 1549, 1558 (2017) ("The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State.") (internal quotation marks and citation omitted). Nonetheless, the Supreme Court has found only one such "exceptional case" in the last 70 years. *See generally Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (temporary relocation of a corporation from the Philippines to Ohio made Ohio the center of corporate activity). Corporate activity in a state that constitutes only 5–10% of overall corporate activity does not suffice. *See BNSF*, 137 S. Ct. at 1554. Sales activity, a regional office, and a subsidiary relationship to another corporation are not enough. *See Daimler AG*, 571 U.S. at 139 ("Here, neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable."). Combining sales, employment, and a physical presence in a state will not create general jurisdiction. *See Brown v. Lockheed Martin Corp.*, 814

7

F.3d 619, 628 (2d Cir. 2016). Media and lobbying activities are not enough, either. *See Waldman*, 835 F.3d at 333.

The above cases demonstrate that the Bank does not cross the threshold for general jurisdiction. The Bank is not incorporated in New York and does not have its principal place of business here. The Jacksons have indicated, and the Bank does not contest, that the Bank has some physical presence in New York and conducts some business here. (Dkt. No. 35 at 3–4.) The Jacksons have not shown that the Bank's activities or presence in New York constitute a majority or at least a substantial plurality of its overall activities. Discovery to that end will not help; the Bank is a publicly traded corporation, and if most of its overall activities occurred in New York then the Jacksons should have been able by now to use publicly available information to make at least a prima facie demonstration to that effect. Under these circumstances, the Bank does not qualify as an "exceptional case" that would support a finding of general jurisdiction.

    *ii. Specific Jurisdiction*

The Court turns now to specific jurisdiction. The Court will focus on the constitutional analysis. Apart from some exceptions for claims related to defamation, "New York decisions . . . at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes purposeful availment of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007) (internal quotation and editorial marks and citations omitted).

"In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking

regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1781 (2017) (internal quotation and editorial marks and citations omitted).[2] "As a rule in these cases, [the Supreme Court] has inquired whether there was some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (internal quotation and editorial marks and citations omitted). The analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122 (citations omitted). In the Second Circuit, "[t]hat analysis involves a consideration of the relationship among the defendant, the forum, and the litigation. Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury." *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) (internal quotation marks and citations omitted).

---

[2] In an effort to show that the Court has specific jurisdiction over the Moses plaintiffs, the Jacksons have asserted that *Bristol-Myers Squibb* does not apply because it "is about limits on the authority of *state* courts under the Fourteenth Amendment, which has no application in *federal* courts." (Dkt. No. 35 at 4.) The Jacksons are correct in the technical sense that *Bristol-Myers Squibb* concerned proceedings that occurred in state court. However, the Court has explained above how federal courts usually follow state law to determine the limits of their jurisdiction. Additionally, "because the language of the Fifth Amendment's due process clause is identical to that of the Fourteenth Amendment's due process clause, the same general principles guide the minimum contacts analysis." *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013).

Here, the Jacksons have not set forth any information indicating that the Bank did anything with or to the Moses plaintiffs *in New York* that would lead to specific jurisdiction.[3] The following passage from the Jacksons' reply brief is the entirety of their argument for specific jurisdiction:

> BofA contends that this Court cannot exercise "specific" jurisdiction because "'courts cannot claim specific jurisdiction' where 'the conduct giving rise to the nonresidents' claims occurred elsewhere.'" Defs. Br. at 4 (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017)). However, *Bristol-Myers Squibb* is about limits on the authority of *state* courts under the Fourteenth Amendment, which has no application in *federal* courts. The Supreme Court explicitly noted this distinction. *Id.* at 1784-85 ("since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court"). As one court recently held under circumstances similar to those presented here, "where a federal court presides over litigation involving a federal question" the Fifth Amendment analysis does not take into account whether the claim arises out of the defendant's activities in the forum state, but instead "focuses on the burden to the defendant (other than a concern about subjecting it to the power of a foreign sovereign)." *Sloan v. General Motors LLC*, __ F. Supp.3d __, 2018 WL 784049 at *7 (N.D. Cal. 2018).
>
> Here, BofA does not even contend—let alone demonstrate—that litigating the Moseses' claims in this Court poses any undue burden. Nor could it possibly make such a claim. That claim has nothing Illinois-specific about it, and BofA will easily be able to defend itself fully in this Court. Moreover, because this is a putative nationwide class action, the Moseses are not "strangers to this litigation." *Id.* at *9. Rather, they are likely part of the putative class that this Court may ultimately certify. Indeed, if anything, BofA will face a greater burden of piecemeal litigation if the Moseses are forced to file a separate suit in Illinois rather than simply join in this already-ongoing case. Accordingly, because it would not violate the Fifth Amendment due process clause for this Court to exercise specific jurisdiction over BofA with respect to the Moses's claim, the Court should reject BofA's personal jurisdiction argument.

(Dkt. No. 35 at 4–5.) In making this argument, the Jacksons have not shown that the Moses plaintiffs applied for or received a mortgage loan in New York. The Moses plaintiffs do not live in

---

[3] The Jacksons bear the burden of establishing a prima facie case of personal jurisdiction in the absence of a hearing, *see Tilyou v. Carroll*, No. CV-92-0750 (CPS), 1992 WL 170916, at *3 (E.D.N.Y. July 2, 1992); the burden rises to a preponderance of the evidence after a hearing or trial. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999) (citations omitted).

New York, did not fall behind in their payments in New York, and did not apply for loan modification in New York. *Cf. Chew*, 143 F.3d at 30 ("Dietrich could reasonably anticipate that he might be 'haled into court' in Rhode Island to respond to a suit to recover damages for injuries that crew members recruited in Rhode Island might suffer during the round-trip voyage.") (citation omitted). In short, the Bank might have interacted with the Moses plaintiffs in Illinois, but it simply did not interact with them in New York. *Cf. SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344–45 (2d Cir. 2018) ("None of the UBS Defendants are resident in New York . . . . At bottom, the contacts alleged by SPV between the UBS Defendants, the forum and the litigation amount to a handful of communications and transfers of funds. These limited contacts are insufficient to allow the exercise of specific personal jurisdiction over the UBS Defendants.") (citation omitted). The Moses plaintiffs consequently cannot be lead plaintiffs for a potential class action in New York, though the lack of specific jurisdiction potentially would not be an impediment to unnamed members of a class. *See Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 124–25 (E.D.N.Y. 2000) ("The New York class members may be considered the jurisdictional representatives of the entire nationwide class in much the same way as the named plaintiffs are its citizenship representatives for purposes of determining diversity competence of the federal court.") (citations omitted).

With neither general nor specific jurisdiction present, the Court lacks personal jurisdiction over the Moses plaintiffs. Without personal jurisdiction, any amendment to the complaint to add claims by the Moses plaintiffs would be futile. Accordingly, the Court will deny the pending motion without the need to consider any of the other arguments from the parties.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies the Jacksons' motion to amend the complaint (Dkt. No. 30).

SO ORDERED.

　　　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: May 25, 2018