**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**
**BUFFALO DIVISION**

BOBBI JACKSON and
MATTHEW JACKSON,
          Plaintiffs,

      v.                                Case No. 1:16-cv-00787

BANK OF AMERICA, N.A.,
          Defendant.

**DEFENDANT BANK OF AMERICA, N.A.'S CONSENTED-TO**
**SUR-REPLY TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.  Plaintiffs' New Class Definition Is Plagued with the Same Problems as their First.

Plaintiffs seek to certify a patently overbroad class of "hundreds of thousands" of people—
most of which, they admit, "have *not* had their rights violated." Mot. at 10, 24. It covers everybody
"that submitted a loss mitigation application to BoA," even concededly "uninjured" ones who have
no claim their applications were mishandled in any way. *Id*. at 1. Bank of America responded with
binding Circuit precedent prohibiting classes that include uninjured people. Opp. at 16–17; *Denney
v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). In reply, Plaintiffs first protest that their
class definition isn't overbroad, and then, no doubt recognizing that it clearly is, propose for the
first time an alternative, "narrower" class definition. Reply at 2–3. Both arguments are meritless.

Plaintiffs' insistence that "there is no requirement that each member of a class provide
evidence of personal standing" (*id*.) is non-responsive to *Denney*, which holds that "[t]he class
must … be defined in such a way that anyone within it would have standing." 443 F.3d at 264.
Bank of America has not demanded any "evidence"—merely a permissible class definition.
Recognizing their tactical error in defining their class to include "uninjured" people (Mot. at 24),
Plaintiffs' reply now backpedals from their concession that anyone was "uninjured," and argues
that they were still harmed even if not in "monetary" terms—on the ground that people with no
grievance whatsoever still have standing to sue because they interacted with a "system" with which
*other* people claim to have a grievance. Reply at 3. If this argument were not self-refuting, it is
amply refuted by the concrete-injury and redressability requirements of *Lujan v. Defenders of
Wildlife*, 504 U.S. 555, 560–61 (1992), and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).
It fails the most basic test of concreteness: "that is, [the injury] must actually exist," in a "'real,'
and not 'abstract'" sense. *Spokeo*, 136 S. Ct. at 1548. If "deprivation of a procedural right without
some concrete interest that is affected by the deprivation … is insufficient to create Article III
standing," *id*. at 1549, then people who concededly "have *not*" suffered the deprivation of any

right (Mot. at 24) have even less of an interest (*i.e.*, no interest at all).[1] Plaintiffs are wrong that "[e]very member of the class" has standing by virtue of their (groundless) claim of a "pattern and practice of violating § 1024.41." Reply at 3. Alleging a "pattern and practice" does not obviate (or satisfy) the constitutional requirement that every party seeking relief was "personally harmed."[2]

The Court need not even consider the "narrower" class definition, because it "appear[s] for the first time in the reply, was not properly filed as a motion," and "is not timely."[3] Regardless, the "narrowed" definition does not remedy the fatal overbreadth or commonality problems. While it no longer covers *every* loss-mitigation applicant and seems at least facially limited to those claiming one or another violation of Regulation X (Reply at 4), it still includes the uninjured. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549. Here, under Plaintiffs' own damages methodology, the "harms" they seek to redress must flow from an unnecessarily

---

[1] *Ross v. Bank of Am., N.A.*, 524 F.3d 217 (2d Cir. 2008), cited by Plaintiffs for the asserted proposition that "'diminished quality of credit card services' conferred Article III standing on a class of cardholders asserting antitrust violations," is not remotely capable of supporting Plaintiffs' argument that people who did *not* experience any "diminished" service quality have standing to sue merely because *other* people claim to have experienced diminished service quality.

[2] *E.g.*, *Hajro v. U.S. Citizenship & Immig. Servs.*, 743 F. App'x 148, 149 (9th Cir. 2018); *see also Lettenmaier v. Freddie Mac*, 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011) (no statutory damages under § 2605(f) without actual damages). Plaintiffs also contend that "BOA does not even attempt to address … the common question of whether BOA engaged in a 'pattern or practice' … entitling class members to statutory damages." Reply at 1. That is false. Bank of America refuted that contention with case law establishing that questions relating only to recoverable damages and not to the validity of the underlying claim (like the "additional damages" available if a "pattern or practice" is shown) are insufficient for commonality. Opp. at 21; 12 U.S.C. § 2605(f).

[3] *Pierce v. Novastar Mortg. Inc.*, 489 F. Supp. 2d 1206, 1215 (W.D. Wash. 2007); *see also, e.g.*, *Romero v. Alta-Dena Certified Dairy, LLC*, 2014 WL 12479370, at *2 (C.D. Cal. Jan. 30, 2014) (where "new class definition was raised for the first time in his reply brief," plaintiff's request "that the class definition be modified from that which is in … his opening motion for class certification is denied"); *Williams v. TGI Fridays, Inc.*, 2018 WL 6528022, at *2 (N.D. Ill. Dec. 12, 2018) ("late amendment to the plaintiffs' class definition arguably should be ignored because it appeared for the first time in their reply brief").

"elongated" application process. Mot. at 29 & Mot. Ex. 42 at 9–10; Reply at 11. But Plaintiffs admit that even their "narrowed" definition includes people who experienced no such thing. For example, a borrower who received an Incomplete Information Notice on Day 6 rather than Day 5 might still receive a loan modification on the same date he would have if the notice had been sent on Day 5. *See* ECF No. 6-1 at 13–14 (demonstrating that Plaintiffs' August 2014 application was not elongated by an alleged acknowledgment delay).

Separately, the new definition continues to encompass claims Plaintiffs do not assert, and for which there is no class representative. It embraces claims under §§ 1024.41(b)(2)(i)(B), 1024.41(c)(3)(i)(A), 1024.41(c)(1), and 1024.41(f) which Plaintiffs do not assert (indeed, which this Court expressly dismissed), in direct violation of the very precedent they rely on in seeking to sweep these claims into the class, *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). Plaintiffs continue to rely on *Marisol* in their reply (at 13–14), but have no response to Bank of America's showing (Opp. at 32–33) that *Marisol* requires subclasses with adequate class representative for "each … separate and discrete legal claim[]"—which Plaintiffs lack. 126 F.3d at 378–79.

## II.   The Nationstar Decision Hurts Plaintiffs Far More than it Helps Them.

Plaintiffs rely heavily on a recent decision their attorneys obtained from the District of Maryland, granting in part and denying in part a motion for class certification in a different § 1024.41 case. *See Robinson v. Nationstar Mortg., LLC*, No. 14-3667, ECF No. 232 (D. Md. Sept. 9, 2019). *Robinson* actually *rejects* the plea for the same kind of overbroad class definition Plaintiffs seek here. Before ruling on class certification, the *Robinson* court entered summary judgment against the plaintiffs on their § 1024.41(f), (g), and (h) claims. *Id*. at 13–17, 32. It then denied class certification of those claims, too, ruling that "since Mr. Robinson has not suffered injury under these provisions, he may not bring those claims on behalf of the class." *Id*. at 32

(citing, *e.g.*, *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993) ("Named class representatives must demonstrate standing through a 'requisite case or controversy between themselves personally and defendants,' not merely allege that 'injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"). As already shown, alleged injuries suffered "by other, unidentified members of the class" are all Plaintiffs allege here for every claim save the § 1024.41(b)(1) reasonable diligence claim.

But even a class limited to the § 1024.41(b)(1) claim fails to satisfy the "one stroke" commonality requirement. Opp. at 25–28. The grounds on which *Robinson* reached a contrary result are not present here. Apparently, "Nationstar d[id] not seriously contest the commonality prong" because it "admit[ted]" that "two months after the implementation date of Regulation X, it had not yet updated its systems to comply with the regulation." *Robinson*, ECF No. 232 at 38–39. The court found this "systematic noncompliance" sufficient to present common questions, notwithstanding that "the particulars of Mr. Robinson's application process will not necessarily prove that Nationstar mishandled the applications of other individual class members." *Id*. That "systematic noncompliance" distinguishes *Robinson* from this case, where the audit record found Bank of America more than 99% compliant. *See* Opp. at 12–13. That said, the court's recognition that the named plaintiffs' case "will not necessarily" resolve anyone else's suggests that the noncompliance alleged there, however "systematic" it may have been, *still* was not the sort that could be proven for a whole class with common evidence, "in one stroke."[4]

---

[4] *See*, *e.g.*, *Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 237 (E.D.N.Y. 2014) ("systematic … 'policy' of noncompliance … does not establish commonality if demonstrating such noncompliance requires, as it would in this case, an inquiry into … each [class member]"); *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 531 (S.D. Cal. 2011) ("even if Defendant has a uniform policy that encourages the wrongful denial of claims, the mere existence of this policy would not prove on a class-wide basis that claims were wrongfully denied").

Plaintiffs say they can find diligence violations by having purported expert Geoffrey Oliver perform individualized loan-file audits, and claim that *Robinson* blessed a "nearly identical" method proposed by Mr. Oliver there. As set forth in Bank of America's *Daubert* briefing, Mr. Oliver's two reports are not remotely "identical," but it is true that they both propose individualized loan-file audits. In *Robinson*, Mr. Oliver reviewed 50 sample loan files, compared Nationstar's IINs with the document submissions, and found 9 loans where Nationstar requested items it already had. *See* ECF No. 87-1 Ex. 5 at 6, 14. The court opined (without explanation) that with this method, "computerized analysis will substantially advance the resolution of such claims, even if not entirely eliminating the need for reviewing certain specific file documents." *Robinson*, ECF No. 232 at 44. That was an overly generous statement of the role of "computerized analysis" in Mr. Oliver's method, and an understatement of the scope of the document review. Both there and here, the computer's only role is to help Mr. Oliver find the many thousands of documents he needs to review manually, but it is that manual review, not any computerized analysis, that advances the resolution of each claim. Mr. Oliver did not use any common or computerized analysis to conclude that Nationstar borrower #604940429 had already submitted "[d]ocumentation for all income sources" when Nationstar requested it, and then that borrower #605870815 had already submitted a hardship letter and tax forms when Nationstar requested them—he manually "reviewed the … documents … for each sample loan." ECF No. 87-1 Ex. 5 at 14.

"What matters to class certification is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers*…." *Wal-Mart*, 564 U.S. at 350. Clear Second Circuit precedent—cited in Bank of America's opposition but unacknowledged in Plaintiffs' reply—holds that "loan by loan" reviews of the type proposed by Mr. Oliver do not generate "common answers." Opp. at 25–28.

Respectfully submitted this 8th day of October, 2019,

/s/ Keith Levenberg
Keith Levenberg
(admitted in N.Y. and W.D.N.Y.)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4248
Fax: (202) 346-4444
klevenberg@goodwinlaw.com

James W. McGarry (*pro hac vice*)
Courtney Hayden (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, Mass. 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
jmcgarry@goodwinlaw.com
chayden@goodwinlaw.com

*Counsel for Defendant Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I, Keith Levenberg, counsel to Defendant Bank of America, N.A., hereby certify that the foregoing document was served to all counsel of record this 8th day of October, 2019 through the Court's CM/ECF system.

<u>/s/ Keith Levenberg</u>