UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BOBBI JACKSON and MATTHEW JACKSON,
                              Plaintiffs,

                                                                        Case # 16-CV-787

v.

                                                                        DECISION AND ORDER

BANK OF AMERICA, N.A.,
                              Defendant.

## INTRODUCTION

Plaintiffs Bobbi and Matthew Jackson ("Plaintiffs") filed a putative class action complaint on September 30, 2016, alleging that their mortgage loan servicer, Defendant Bank of America ("Defendant"), improperly and untimely processed their mortgage assistance applications so that it could charge them excessive loan delinquency fees. Specifically, Plaintiffs alleged Defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, its implementing regulations, 12 C.F.R. §§ 1024.1-1024.41, and Section 349 of New York's General Business Law ("GBL").

Defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 6. On November 21, 2017, the Court dismissed all of Plaintiffs' claims except for those relating to the time period between January 28, 2014 and December 20, 2014, leaving only the claim that Defendant failed to use "reasonable diligence" in violation of 12 C.F.R. § 1024.41(b)(1). ECF No. 15. The Court denied leave to amend the complaint and the parties commenced discovery. ECF No. 39.

Presently before the Court is Plaintiffs' motion to certify a class pursuant to Rule 23 (ECF No. 77) and Defendant's motion to strike the purported expert report Plaintiffs submitted in support of their motion to certify the class (ECF No. 87). For the reasons stated below,

1

Defendant's motion is DENIED and Plaintiffs' motion is DENIED.

## BACKGROUND[1]

### I. Regulatory Background

After the 2008 recession, mortgage loan servicers such as Bank of America struggled to handle the increase in delinquent loans, mortgage modification requests, and foreclosures they were required to process. ECF. No. 1 at 11. Servicers were either too overwhelmed to timely process mortgage assistance applications, or in some instances, unwilling to. Because servicers earn revenue from "fees assessed on borrowers, such as late fees," servicers had every incentive to delay the loss mitigation application process. *Id.* In one case, former Bank of America employees stated that they were "instructed that their job was to maximize fees for BofA by delaying and refusing to process loss mitigation applications," and were instructed to "tell borrowers that their loss mitigation applications were under review, even though that was not the case or to falsely claim that documents were incomplete or missing." ECF No. 1 at 21.

In an effort to help borrowers seeking mortgage assistance, the Consumer Financial Protection Bureau issued final rules under RESPA requiring servicers to follow strict procedures and deadlines for processing mortgage assistance applications and disclose important information to borrowers about the status of their application. *See* 12 C.F.R. § 1024.41. Section 6(f) of RESPA gives borrowers a private right of action against servicers that fail to comply with any portion of 12 C.F.R. § 1024.41. ECF No. 1 at 17. Borrowers can recover actual damages, as well as statutory damages if a servicer demonstrates a "pattern or practice" of noncompliance with the rules. *Id.* at 24. These rules became effective on January 10, 2014. *Id.*

---

[1] The following allegations are taken from Plaintiff's complaint (ECF No. 1).

**II.     Facts**

Plaintiffs purchased their home in 2007. Their initial monthly mortgage payment was $609.44, and Defendant subsequently became the servicer of Plaintiffs' mortgage. In 2009, Plaintiffs fell behind on their mortgage payments after Plaintiff Matthew Jackson's employer laid him off. In 2010, after Mr. Jackson found a new job, Plaintiffs attempted to make partial payments on the overdue amount they owed Defendant. Defendant rejected the partial payments, demanding instead that Plaintiffs pay the overdue amount in a single lump sum or face foreclosure. Plaintiffs could not afford to pay a lump sum, and repeatedly requested mortgage assistance from Defendant. Defendant rejected the requests, informing Plaintiffs that it was missing information from them, even though Plaintiffs had already submitted the information Defendant claimed it was missing. Because Defendant would not grant Plaintiffs mortgage assistance and rejected Plaintiffs' partial payments, the outstanding amount Plaintiffs owed on their mortgage continued to grow, and Defendant assessed late fees, property inspection fees, fees for mortgage insurance, and other charges to the balance of what Plaintiffs owed.

At the beginning of 2014, regulations[2] requiring servicers to comply with certain procedures when processing borrowers' mortgage assistance applications went into effect. Plaintiffs subsequently applied for mortgage assistance on January 28, 2014. On January 30, Defendant acknowledged receipt of Plaintiffs' application.

Plaintiffs' complaint contained numerous allegations of violations of the 2014 regulations, as applied to Plaintiffs' application for mortgage assistance. However, the Court dismissed all of Plaintiffs' claims except for the claim arising out of § 1024.41(b)(1) that Defendant failed to use reasonable diligence in obtaining documents and information to complete

---

[2] Plaintiffs sue Defendant under these regulations, 12 C.F.R. § 1024.41.

3

a loss mitigation application. ECF No. 15 at 16. None of Plaintiffs' other claims regarding the mishandling of their application survive.[3] Therefore, the only remaining claim alleges that Defendant failed to use reasonable diligence, as described below.

On February 1, Defendant sent Plaintiffs a letter claiming that it could not complete its review because it needed copies of IRS Form 4506-T, which would allow Defendant to request a transcript of Plaintiffs' tax return. It also requested a copy of a social security award letter or benefits letter. Plaintiffs, however, had already submitted copies of both documents with their initial application package. Defendant's letter also asked Plaintiffs to provide copies of their tax returns, even though Defendant did not require Plaintiffs to submit their tax returns with their initial application. Finally, the letter asked for copies of bank account statements from Plaintiff Bobbi Jackson, even though Plaintiffs had already provided copies of statements for their joint bank account, which was the only bank account they had.

Defendant sent two additional letters on February 20, 2014 and March 4, 2014 stating that it had received the documentation Plaintiffs had sent it supporting their request for mortgage assistance, but that Defendant needed all required documentation specified in its "initial notice." The letters did not identify what information was missing. Instead, it instructed the Plaintiffs to refer back to their initial application package or to Defendant's website to see which documents Defendant had received. The website, however, did not specify which documents were missing— it provided only a generic list of all documents a borrower may need to complete their application.

On March 5, Defendant again asked for Ms. Jackson's bank statements, even though

---

[3] Plaintiffs made two arguments under § 1024.41(b): (1) that Defendant failed to use reasonable diligence in completing a loss mitigation application and (2) that Defendant failed to abide by a five-day notification requirement. The Court concluded that "Defendant did not violate Section 1024.41(b)(2) by acknowledging receipt of Plaintiffs' application in one letter and determining that their application was incomplete in another letter." ECF No. 15 at 8 n.3. Therefore, the only remaining claim under § 1024.41(b) relates to Defendant's apparent failure to use "reasonable diligence," in violation of § 1024.41(b)(1).

Plaintiffs had already provided statements for their joint bank account. Defendant next sent Plaintiffs two identical letters dated March 13 and March 25 stating it had received the documentation supporting their request for mortgage assistance and referring them back to their initial application package or Defendant's website to determine if any information was still missing.

Defendant sent Plaintiffs a letter on April 12, 2014, again asking them to provide an IRS Form 4506-T and copies of their tax returns—both of which Plaintiffs had already provided on numerous occasions. It also asked for copies of Mr. Jackson's pay stubs that Plaintiffs had already submitted. On April 15, Defendant sent another identical letter to Plaintiffs.

On May 20, Defendant sent Plaintiffs a letter asking them to submit another copy of their initial mortgage assistance application because the required hardship affidavit—a statement explaining why Plaintiffs were seeking mortgage assistance—was allegedly missing from their original January 28 application. Plaintiffs had not written the hardship explanation in the correct spot of the application, and had not provided enough information about why they needed mortgage assistance. Plaintiffs then resubmitted their application, this time with the requested hardship affidavit in the correct format, and Defendant acknowledged receipt on May 22 and June 6, 2014.

After all this, Defendant sent Plaintiffs a letter on June 28, 2014 stating that it had not received the documentation requested in its May 20, 2014 letter, and informed Plaintiffs that it was no longer reviewing their application. Plaintiffs argue that Defendant did all of the above in violation of § 1024.41(b)(1)'s requirement to exercise "reasonable diligence" in completing an application.

# DISCUSSION

## I. Motion to Strike Expert Report

Defendant seeks to exclude the expert report of Geoffrey A. Oliver, CPA, CFF, CMB on the basis that he is not qualified to render an expert opinion in support of Plaintiffs' motion for class certification because the opinions he expresses in the expert report do not meet the standards of relevance and reliability as outlined in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny. Oliver's expert report purports to create a methodology to review Defendant's failure to comply with 12 C.F.R. § 1024.41 as applied to the putative class.

### a. Legal Standard

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which permits an expert "qualified . . . by knowledge, skill, experience, training, or education" to testify if the testimony would be helpful to the trier of fact, is "based on sufficient facts or data," and is "the product of reliable principles and methods," reliably applied to the facts of the case. Fed. R. Evid. 702; *see Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 WL 3812063, at *4 (S.D.N.Y. Aug. 14, 2019). "When a motion to exclude expert testimony is made at the class certification stage, the *Daubert* standard applies, but the inquiry is limited to whether or not the expert reports are admissible to establish the requirements of Rule 23." *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086, 2013 WL 5658790, at *13 (S.D.N.Y. Oct. 17, 2013) (quoting another source) (alternation omitted). "The question is not, therefore, whether a jury at trial should be permitted to rely on [the expert]'s report to find facts as to liability, but rather whether [the court] may utilize it in deciding whether the requisites of Rule 23 have been met." *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 77 (E.D.N.Y. 2000), *aff'd sub nom. In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001).

In evaluating the admissibility of an expert report, courts consider the following factors:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error in the case of a particular scientific technique; and (4) whether the theory or technique is generally accepted within the relevant scientific community.

*Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 111 (E.D.N.Y. 2019), *appeal dismissed, leave to appeal denied*, No. 19-628, 2019 WL 4296129 (2d Cir. Aug. 28, 2019).

**b.  Analysis**

Most of Oliver's report is devoted to claims that the Court dismissed. As a result, Defendant's motion to strike those portions relevant to the dismissed claims is denied as moot.

Oliver devotes three paragraphs—less than half a page in his 24-page report—to the surviving reasonable diligence claim. With respect to that claim, Oliver proposes that he test Defendant's exercise of reasonable diligence by aggregating data provided from Defendant. Oliver suggests that he

> use data from the tab called "MailingsAndAppeals" from Exhibit BANA_JACKSON000057405. I will review Column C called "OfferType" in the "MailingsandAppeals" tab to determine if the Bank had requested documentation from the borrower that it already had in its files per its document tracking/storage files. I will identify any loans which have both a "complete package" code and a subsequent incomplete information notice (IIN) and/or a denial due to incomplete information. To confirm the communications' purpose, I will review the data in column "I" called "SubOfferType" which describes the specific event/purpose for each letter. The date of each letter will be taken from Column E called the "DocsMailedToBorDt".

Sealed Report of Geoffrey A. Oliver in Support of Motion to Certify Class, ECF No. 83-4 at 15.

However, the crux of a § 1024.41(b)(1) "reasonable diligence" claim is that a defendant erroneously requested documents or information it already had or should not have otherwise requested. To explore whether Defendant exercised reasonable diligence in making requests for documents or information in a particular application, Oliver indicates that he will need to "confirm

7

that multiple requests for the same information were made." ECF No. 83-4 at 16. In his deposition testimony, Oliver indicated that he would need to review the file to determine whether the document or information Defendant sought had already been provided. Sealed Exhibits to Mot. to Strike, ECF No. 93-3 at 13 ("What documents would you have to review to make that confirmation [that multiple requests were made]? . . . I think it's already said, but it is first the request for whatever document they're looking for and then, second, the document repository, is it there or not."). Oliver indicated that he would need to "look at the wording" of the documents (*id.* at 4-5) and, importantly, confirmed that "reasonable diligence . . . is not a calculation" (*id.* at 12).

Defendant attacks the substance of Oliver's report, arguing that the proposed method of identifying class members does not lend itself to class certification. Rather, Defendant argues that the expert report actually supports *denying* the motion to certify. ECF No. 87-1 at 9 ("Unfortunately for Plaintiffs, the 'loan-by-loan' analysis that precludes class certification is exactly what their own expert concedes must be done."). In this way, Defendant seems to concede that the expert report is at least relevant in disposing of the motion to certify.

The Court agrees. As outlined below, the Court has serious reservations about the reliability and adequacy of Oliver's methodology to identify applicants aggrieved by Defendant's purported failure to use reasonable diligence in requesting additional documentation. Although Plaintiffs try to paint Oliver's methodology as requiring some level of rote number-crunching, Oliver's report—at least with respect to the only remaining reasonable diligence claim—actually contemplates that he exercise some judgment on the reasonableness of Defendant's actions with respect to a given application and a need to evaluate some unspecified number of loan files on an

individual basis.[4] Nevertheless, as explained below, the Court finds that even with Oliver's expert report, Plaintiffs' motion for class certification fails. Indeed, the motion for class certification must be denied, in part, based on the way in which Oliver proposes to identify potential class members who have been injured by Defendant's conduct. Oliver's proposed process demonstrates that potential class members do not face common issues and such issues do not predominate. Therefore, the Court will consider Oliver's expert report in analyzing the merits of the class certification motion and the motion to strike is denied. *See Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 318 (E.D.N.Y. 2014) ("Plaintiffs' motion to strike the expert report . . . is denied because the limited propositions from the Report on which the Court relies are relevant, permissible, and uncontroverted.").

II.     **Motion for Class Certification under Rule 23**

        a.     **Legal Standard**

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). Indeed, a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). "A district judge [must] assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement

---

[4] At least one court has found a similar expert report by Oliver to meet the *Daubert* standard. In *Robinson v. Nationstar Mortgage LLC*, No. TDC-14-3667, 2019 WL 4261696 (D. Md. Sept. 9, 2019), there were multiple other claims at issue, for which Oliver's expert report seemed better suited to address. That is not so here. The court in *Robinson* did not extensively examine Oliver's expert report in relation to the only remaining claim here: the § 1024.41(b)(1) reasonable diligence issue.

has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). The Rule 23 inquiry may overlap with the merits of the underlying claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). When this occurs, courts are to consider the merits questions only to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

A district court's class certification ruling is reviewed under the highly deferential abuse of discretion standard, meaning the court "'is empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions,'" meaning that a reviewing court "will only find 'abuse' when the district court's decision 'rests on an error of law . . . or a clearly erroneous factual finding, or . . . its decision . . . cannot be located within the range of permissible decisions.'" *Myers*, 624 F.3d at 547 (internal citations omitted) (emphasis in original).

Rule 23(a) sets out four threshold requirements for certification:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The "failure to meet any one of Rule 23's requirements destroys the alleged class action." *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69-70 (E.D.N.Y. 2000).

The first requirement, numerosity, demands that joinder of all class members be impracticable, in the sense that "joinder would needlessly complicate and hinder efficient resolution of the litigation." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 WL 1040052, at *11 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL

2473039 (June 7, 2013) (internal quotation marks omitted). "Although precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement." *Id.* (internal quotation marks omitted).

The Supreme Court has observed that the concept of commonality is easy to misunderstand since:

> [a]ny competently crafted class complaint literally raises common "questions." . . . What matters to class certification . . . is not the raising of common "questions"— even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 349-50. By contrast, where liability must be established through individualized proof, courts have declined to find commonality. *See, e.g.*, *Xuedan Wang v. Hearst Corp.*, 617 F. App'x 35, 37-38 (2d Cir. 2015) (summary order) (plaintiffs failed to establish commonality in case brought by unpaid interns alleging that they were "employees" under FLSA and NYLL, where question of each intern's employment status involved "highly individualized inquiry").

"Typicality under Rule 23(a) requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Spencer*, 2013 WL 1040052, at *17 (internal quotation marks omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (quoting another source). "While it is settled that the mere existence of individualized factual questions with respect

11

to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* at *18 (quoting another source).

The last requirement of Rule 23(a) is adequacy of representation. "Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *Id.* at *20 (quoting another source). "[T]he issue of appropriate class counsel is guided by Rule 23(g)," which sets forth a number of factors the court must consider. *Id.*; *see also* Fed. R. Civ. P. 23(g)(1). As to class representatives, they "cannot satisfy the adequacy requirement if they have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Spencer*, 2013 WL 1040052, at *20 (internal quotation marks omitted).

If the plaintiffs demonstrate by a preponderance of the evidence that the proposed class meets the requirements set out in Rule 23(a), then the court must determine whether the action satisfies one of the criteria of Rule 23(b). *See Dukes*, 564 U.S. at 345. Under Rule 23(b), a party may only maintain a class action by demonstrating that: (1) bringing the claims as separate actions would create a risk of inconsistent or adverse adjudications; (2) the party opposing the class has acted or refused to act on grounds that apply to the class in general, making injunctive or declaratory relief appropriate for the class as a whole; or (3) common questions of fact or law predominate over any individual questions and a class action is a superior method of efficiently and fairly adjudicating the matter. Fed. R. Civ. P. 23(b)(1)-(3). Here, Plaintiffs rely on Rule 23(b)(3).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers*, 624 F.3d at 547 (quoting another source). The requirement's purpose is to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)). The requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* (quoting another source). "[T]he predominance inquiry is similar to, but more demanding than, the commonality inquiry." *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 Civ. 8450, 2013 WL 6061340, at *7 (S.D.N.Y. Nov. 15, 2013).

> Regarding superiority, Rule 23(b)(3) provides a list of relevant factors:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

**b. Analysis**

Plaintiffs ask the Court to certify the following class: "All persons in the United States that submitted a loss mitigation application to BoA on or after January 10, 2014." ECF No. 17-1 at 6. Plaintiffs fail to establish several of the requirements set forth above for class certification, and as a result, their motion to certify the class is DENIED.

13

### i. Class Certification for Dismissed Claims

Plaintiffs seek to certify a class that encompasses all the violations of § 1024.41 alleged in the complaint. As explained above, however, the Court dismissed all but one of those claims. A plaintiff can only represent a class if a defendant's conduct against plaintiff "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal quotation marks omitted). Plaintiffs here cannot represent a class of individuals for injuries that the Court previously determined Plaintiffs themselves did not suffer.

Plaintiffs rely extensively on *Robinson v. Nationstar Mortgage LLC*, No. TDC-14-3667, 2019 WL 4261696 (D. Md. Sept. 9, 2019) to support their position, even though *Robinson* does not help them much. *Robinson* involved similar facts and similar claims under § 1024.41. Plaintiffs' counsel here represented the husband and wife plaintiffs in *Robinson*. There, the court dismissed several claims under various subsections of § 1024.41 and denied the plaintiffs' motion to certify with respect to the dismissed claims. The court held that "[s]ince Mrs. Robinson may not bring a claim under Regulation X, she may not be a named class representative. Similarly, since Mr. Robinson has not suffered under these provisions, he may not bring those claims on behalf of the class." *Id.* at *15. Like *Robinson*, because named Plaintiffs here have not suffered an injury with respect to any of the dismissed claims, they may not bring those claims on behalf of a class. *See Retirement Bd. of Policemen's Annuity Fund v. Bank of New York Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (concluding that named plaintiff's claims did not raise the "same set of concerns" as absent class members and that named plaintiffs therefore lacked class standing). The only claim that Plaintiffs may be able to bring on behalf of a purported class is one arising under § 1024.41(b)(1) for Defendant's failure to exercise "reasonable diligence."

## ii.         Class Certification for § 1024.41(b)(1) Claims

Plaintiffs' proposed class for their § 1024.41(b)(1) "reasonable diligence" claim also fails to satisfy several of the elements required under Rule 23.[5]

Plaintiffs have not established commonality. As explained above, the party seeking class certification must "demonstrate that the class members have suffered the same injury" and that their claims "depend on a common contention." *Dukes*, 564 U.S. at 350 (quoting another source). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The key to commonality is whether a class-wide proceeding will "generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting another source) (emphasis in original).

The class as defined by Plaintiffs does not generate common answers apt to drive the resolution of the litigation, nor is it capable of being resolved in "one stroke." Rather, Plaintiffs have admitted that their expert will need to review an unknown number of loan documents and spreadsheets to determine whether Defendant failed to use reasonable diligence for each class member—even if some of the work can be done by automation. ECF No. 83-4 at 15-16. The purported class of all people who submitted loan modification applications may include hundreds of thousands of people. Sealed Mem. of Law in Support of Mot. to Certify, ECF No. 83 at 7-8. Defendant's data indicates that roughly 95% of potential class members did *not* experience issues with their modification applications. *Id.* at 14-15. The remaining 5% of applicants include individuals that *may* have experienced issues relating to the reasonable diligence requirement but also those that may have experienced problems relating to other requirements no longer at issue in

---

[5] Because the Court finds that Plaintiffs fail to establish commonality and predominance, it does not address any of the other elements necessary for certification under Rule 23.

this case. *Id.* at 15. Plaintiffs' expert would need to go through application packages and correspondence to determine whether the reasonable diligence requirement was satisfied. Even then, such a review will require the expert to make a judgment call about whether "reasonable diligence" was exercised. Although Plaintiffs' expert may be able to narrow the field of class members who experienced reasonable diligence issues by limiting review to applications Defendant requested additional information from and those Defendant indicated were "complete," Plaintiff does not identify how many applications such a limitation would encompass. *Id.* at 15-16. Such an individualized review, contingent on the particular facts related to that application, is not likely to generate common answers capable of class-wide resolution. *See Piotrowski v. Wells Fargo Bank, NA*, No. 11-3758, 2015 WL 4602591, at *18 (D. Md. July 29, 2015) ("This question will not generate a *common answer*, however, because, as explained above, Wells Fargo would have to undertake individualized reviews of loan files to determine when loan modification applications were received, whether they were complete or incomplete, what correspondence Defendant sent to each applicant, and whether Defendant violated the notice provisions of the ECOA.") (emphasis in original).

For similar reasons, Plaintiffs have failed to establish the "predominance" requirement of Rule 23(b). "The 'predominance' requirement of Rule 23(b) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Myers*, 624 F.3d at 547 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Once again, the requirement is designed to ensure "'that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting *Cordes*, 502 F.3d at 104) (alteration omitted). "Therefore the requirement is satisfied 'if resolution of some

of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Id.* (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Although each of the putative class members submitted loan modification applications, the similarities between class members end there. To be sure, "[t]he possibility that damages may have to be determined on an individualized basis is not itself a bar to class certification." *Toney-Dick v. Doar*, No. 12 CIV. 9162 KBF, 2013 WL 5295221, at *7 (S.D.N.Y. Sept. 16, 2013). But determining which of those class members encountered Defendant's failure to exercise reasonable diligence will require a highly-fact intensive analysis. Indeed, such a determination would require Plaintiffs' expert to determine whether Defendants sought additional documents from putative class members and then delve into the *substance* of those communications to determine if Defendant violated § 1024.41(b)(1). This type of individualized, loan-by-loan inquiry necessary to determine liability demonstrates that class-wide issues do not predominate. *See Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) ("A class-wide resolution to the privity question was not possible because, without *class-wide* evidence that class members *were* in fact in privity with The Money Store, the fact-finder would have to look at every class member's loan documents to determine who did and who did not have a valid claim."); *Davis v. Navient Corp.*, No. 17-CV-00992-LJV-JJM, 2018 WL 1603871, at *6 (W.D.N.Y. Mar. 12, 2018), *report and recommendation adopted*, No. 17-CV-0992, 2019 WL 360173 (W.D.N.Y. Jan. 29, 2019) ("As defendants note, in order to determine whether each class member has a viable claim, it would be necessary to consider the nature of the putative class member's communications with Navient Solutions, whether the putative class member was eligible for consolidation, whether Navient Solutions adequately

communicated that eligibility to them, and whether the putative class member relied on the information (or lack of information).") (internal quotation marks omitted). In other words, the nature of the § 1024.41(b)(1) claims "unavoidably generates significant differences in the proof that will be offered for each" loan, precluding a finding of predominance. *Accord Retirement Bd.*, 775 F.3d 154 at 163.

### iii. Proposed Modification of Class Definition

Plaintiffs attempt to remedy their inability to establish commonality and predominance by arguing in their reply that the Court can correct this error by adopting their proposal to modify the class. ECF No. 101 at 8. They are wrong. The proposed class encompasses all individuals who may have a claim against Defendant for all of the violations of 12 C.F.R. § 1024.41 alleged in the original complaint. But as discussed above, there is only one remaining allegation in the complaint. The Court declines to draft a new class definition out of whole cloth. Even if the Court were to limit the class to only individuals with potential claims for 12 C.F.R. § 1024.41(b)(1) for Defendants' alleged lack of reasonable diligence, such a proposed class would likely not be ascertainable, for the same reasons the proposed class of all individuals who submitted mortgage modification applications fails to demonstrate commonality and predominance—a highly fact-specific analysis would need to be completed to determine who was in the class.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to certify a class (ECF No. 77) is DENIED, and Defendant's motion to strike the expert report (ECF No. 87) is DENIED.

IT IS SO ORDERED.

Dated: December 30, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court